**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANDRE RICARDO ROACH | : |
| Petitioner | : |
| v. | : Civil Action No. RWT-07-1136 |
| FRANK C. SIZER, JR., et al. | : |
| Respondents | : |

. . . . . . .o0o. . . . . . .

**MEMORANDUM OPINION**

Andre Richardo Roach ("Roach"), through counsel, petitions under 28 U.S.C. § 2254 for Writ of Habeas Corpus, challenging his convictions for second-degree murder and use of a handgun in the commission of a crime of violence. Respondents, Frank Sizer[1], Warden of the Jessup Correctional Institution, and Douglas F. Gansler, Attorney General of the State of Maryland, have filed a response. Upon careful review of the pleadings, transcripts, and applicable law, the Court determines an evidentiary hearing is unnecessary and relief is DENIED.

**PROCEDURAL BACKGROUND**

On April 30, 1998, a jury sitting in the Circuit Court of Prince George's County convicted Roach of first-degree murder and use of a handgun in the commission of a crime of violence in the murder of Donald Wayne Bunn. Roach was sentenced to life for murder with a consecutive twenty-year term for the handgun offense. The Court of Special Appeals of Maryland affirmed the convictions. However, the Court of Appeals of Maryland reversed and remanded the case for new trial on the basis that the trial court failed to give the jury a voluntary manslaughter instruction on

---

[1] Roach is currently confined at the North Branch Correctional Institution where the warden is Bobby Shearin. Bobby Shearin will be substituted as respondent in lieu of Frank Sizer. See Rule 2(a), 28 U.S.C. folio. § 2254; Fed. R. Civ. P. 25(d)(1).

imperfect self-defense.  See Roach v. State, 358 Md. 418 (2000);  Exhibit 14.

Roach was retried before a jury on February 6-8, 2001. [2]  Roach was acquitted of first-degree murder and convicted of second-degree murder and use of a handgun in the commission of a crime of violence.  On February 23, 2001,  Roach was sentenced to thirty years for second-degree murder and twenty years for the handgun offense to be served consecutively.   The sentences commenced on June 24, 1997.

On direct appeal, Roach questioned whether: 1) the trial court erred in failing to exclude all oral statements made by the appellant to the police prior to him being given warnings under Miranda v. Arizona, 384 U.S. 386 (1966); 2) the trial court erred in permitting improper closing argument; and 3) the trial court erred in instructing the jury on concealment of evidence.  On January 25, 2002, the Court of Special Appeals affirmed Petitioner's convictions in an unreported decision,  Roach v. State, No. 183, Sept. Term, 2001.  The Court of Appeals denied certiorari on June 11, 2002.

Roach filed a Petition for Post-Conviction Relief in the Circuit Court for Prince George's County.  As amended, the Petition alleged ineffective assistance of trial counsel for failing to 1) failing to move to suppress statements taken in violation of Miranda; 2) to call character witnesses to testify; and 3) to request a "heat of passion jury instruction.  Roach also requested relief based on the cumulative effect of the deficiencies. A hearing was held February 9, 2004.  On December 13, 2005, post-conviction relief was denied.  On September 20, 2006, the Court of Special Appeals summarily denied Roach's Application for Leave to Appeal.  Roach's Motion for Reconsideration was denied on January 24, 2007.

---

[2] Roach was represented by different counsel at each trial.

2

**FACTS**

The Court of Special Appeals recounted the facts adduced at his second trial.

On the evening of February 16, 1997, appellant shot and killed Donald Wayne Bunn after a fight in the parking lot of a liquor store in Landover, Maryland. At appellant's trial, the State alleged that appellant chased Bunn up a hill and then shot him in the back. Appellant did not dispute that he shot Bunn but argued that he had acted in self-defense. Viewing the evidence in the light most favorable to the prevailing party, the State, the evidence elicited at trial established the following:

Around 10:00 p.m. Reginald Bowen drove himself and his friend, Bunn, to Palmer Liquor Store. Bowen backed his car into a parking spot in the store's parking lot. He and Bunn went inside and purchased some beer. While they were inside the store, a jeep parked in a parking spot next to the driver's side of Bowen's car. Sitting in the jeep was appellant and three of his friends. Bowen and Bunn exited the store. As Bowen returned to the driver's side of his car, he passed appellant, who had stepped out of the jeep. Bowen and appellant had known each other for many years.

The two exchanged some angry words and then, according to Bowen, appellant hit him. The two began to fight. In response, appellant's friends got out of the jeep to help appellant, and Bunn, who was sitting in Bowen's car, got out of the car to help Bowen. During the fracas, one of appellant's friends yelled, "Get the gun. Get the gun." Appellant pulled a revolver from his waistband and hit Bunn on the head with it.

At that point, the group dispersed. Bunn ran across the street toward some apartments where he lived. Appellant followed him. Bowen ran into the liquor store and told the security guard on duty that a fight had taken place in the parking lot and someone had a gun. As the guard and Bowen exited the store, they heard gun shots.

Bowen ran across the street and up an incline, where he found Bunn on his knees. Bunn had been shot twice, once in the chest and once in the groin. The police and paramedics arrived, but Bunn died shortly thereafter. Bowen told the police what happened, but he did not provide the police with appellant's name because, as he explained at trial, " I was going to take care of it myself."

Sometime that spring, appellant told an acquaintance, Cornell Wade Floyd, that he had a .38 gun that he wanted to sell. Appellant explained to Floyd that he wanted to trade for a bigger revolver. Appellant gave Floyd his .38 gun and $200 in exchange for a .44 revolver.

On April 22, Bowen identified appellant's picture from a police photo array as a picture of the man who produced the gun and with whom he had fought. Two

days later, appellant was arrested and transported to a police station. Officer Norman P. Miller testified that, at 1:02 p.m. he advised appellant that he was the main suspect in the shooting. Appellant at first denied any involvement with the crime. After some further discussion, appellant admitted that he was present at the liquor store at the time of the shooting. At 2:14 p.m., appellant completed a waiver of rights form and gave the following statement.

> At Palmer Liquor Store with Andre Younger and Vito Perry and Moe, I don't know his real name- we all pull up at the liquor store, and I seen [Bowen] - I knew for a while-friends of the family- had some words, and then me and [Bowen] started fighting, then he knocked me to the ground, and his friend started helping him, and he was fighting the guys with me, and so when I got off the ground, [Bowen] let me go.
>
> When he heard some gunshots acress the street, and ran inside the store, but I seen the guy run across the street when I was fighting. I didn't see who ran behind him, so we, Andre and Vito Moe- I don't know if that is his real name- pulled off.

Appellant told the officer that he did not know who shot the victim and he did not know who owned the gun. The interview ended at 3:04 p.m.

At 3:10 p.m. Sergeant Joseph McCann interviewed appellant. When he entered the room, appellant had written a note of apology on a piece of paper. The second statement read:

> I was very sorry this to happen, but I was a juvenile at the time, and I was scared, just like anybody would have been, and so if your family can forgive me for what happened.
>
> I cried every night. I was stressed out, and wanted to kill myself at one time. I want to church and asked for forgiveness, so please, can you give me another chance, please.

The sergeant explained to appellant that they had someone who said appellant had the gun and that appellant chased the victim across the street with the gun. Appellant began to shake. Shortly thereafter, appellant admitted that he was the one who shot the victim. Appellant then gave a third statement in which he confessed to shooting the victim. When asked to describe what happened that night, appellant said:

> At the Palmer Liquor Store we pulled up at about 11:00 p.m. next to [Bowen], but we didn't pull up to start nothing. We came to get some drinks.
> So while waiting me and [Bowen] had some words over $5. So [Bowen] was already drunk, so [Bowen] said something to me, and I turned

4

> my head. So when I turned back, [Bowen] tried to hit me, and so me and [Bowen] was fighting.
>
> Vito jumped out and stared helping me, because [Bowen] was a big guy, and Vito couldn't do nothing, because Vito is smaller than me.
>
> So [Bowen's] friend jumps out the car and said "fuck this," and ran around and knocked me and Vito onto the ground, but he didn't keep hitting Vito. He came straight to me and started beating me to the ground. So that is when Moe tried to help.
>
> I seen the gun on the ground, and [Bowen's] friend seen the gun, so I thought he was going to kill me right there on the scene, but I got the gun from him, and we was fight for the gun, until someone said "the police is in the store," and he didn't care if the police was in the store, and so I hit him with the gun, and he started going across the street.
>
> Me and him, so we star[t] fighting again, and because of him being drunk he fell over the curb and tried to take the gun, and I shot him, but I didn't want to, because I thought he was doing to try to do something to me.

Although appellant initially told Sergeant McCann that the gun belonged to Moe, he eventually admitted that the gun was his and that he had sold it. The next day the police recovered the gun from Floyd. When the police showed appellant the gun, he admitted that it was the gun he used to shoot Bunn.

Bowen testified that neither he nor Bunn had a weapon that night and he had never seen Bunn carrying a weapon. A medical examiner testified that the shot to Bunn's chest was from back to front and downwards. He also described a 3/4 laceration to the left side of Bunn's scalp, which was consistent with a hard blunt object. In addition, he described two abrasions on each of Bunn's knees, which was consistent with "terminal collapse," when a person "fall[s] on his knees and will abrade or scrape his knees."

Appellant presented one witness. That witness, a police detective, testified that when he spoke with Bowen a half hour after the shooting he noticed a slight odor of alcohol coming from Bowen.

Roach v. State, No. 183 Sept. Term, 2001, see also Exhibit 21, pp. 1-6.

At retrial, defense counsel moved to exclude Roach's pre-Miranda statements. The court reserved ruling on the motion. Exhibit 16, pp. 118-19. Defense counsel failed to renew the motion

5

or seek a ruling on it, and no ruling was made.  The prosecutor did not introduce Roach's pre-Miranda statement or refer to it during closing argument.

## PETITIONER'S CLAIMS

Roach requests federal habeas corpus relief on the following grounds: 1) trial counsel was ineffective for failing to: a) request a "heat of passion" jury instruction; b) conduct an adequate investigation and call character witnesses to testify; and c) move to suppress statements taken in violation of Miranda; and 2) his constitutional right to present a defense was denied by the absence of a "heat of passion" jury instruction.

## STANDARD OF REVIEW

The federal habeas statute, 28 U.S.C. § 2254, as amended, provides a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447 (2005).  A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). State-court factual findings are presumed correct and a petitioner has the burden of rebutting the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Ineffective assistance claims are reviewed under a two-part test established in Strickland v Washington, 466 U.S. 668 (1984); see also Bell, 535 U.S. at 698-99 (explaining the interplay between Strickland and 28 U.S.C. § 2254(d)).  To establish ineffective assistance of counsel, it must be shown that 1) counsel's deficient performance 2) prejudiced the defense. See id. at 687.

6

Representation is deficient if it falls below "an objective standard of reasonableness." Id. at 688. It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." Id. at 687. The standard of review for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."Id. at 669. To prevail, the petitioner must overcome the presumption that the challenged action might be considered "sound trial strategy." Id. at 689.

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. See id. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Id. at 686. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. See id. at 697. In the § 2254 context, a petitioner must show that the state court applied Strickland to the facts in an objectively unreasonable manner. See Bell, 535 U.S. at 698-99.

## ANALYSIS

### I. Ineffective Assistance of Counsel Claims

#### a. Failure to Request Heat of Passion Jury Instruction

Roach asserts that he was denied his Sixth Amendment right to effective assistance of trial counsel because his attorney failed to request a jury instruction on heat of passion, which would have reduced the murder conviction to manslaughter if accepted by the jury. He contends that the

evidence "readily permitted the conclusion that the shooting was done in the heat of passion, in response to legally adequate provocation- being beaten by two men larger than himself- and that there was a tight causal connection between the beating and the shooting with no opportunity for the passion to have cooled." Petition , p. 9.

When trial counsel was asked at the post-conviction hearing why he had not asked for a heat of passion instruction, he stated "I have no explanation really. You've raised it and I can't recall why I didn't ask for it. I just overlooked it." Exhibit 27, p 11. He said it was an "oversight." Id. It was not a "strategic decision." Id.

The post-conviction court rejected Roach's claim, stating:

> Roach further contends that his trial attorney performed deficiently in failing to pursue an alternative theory of "heat of passion." Although the trial judge rejected that theory in the first trial, Roach claims that he was unfairly prejudiced because his attorney never asked the court to consider that theory. Roach at 424.
>
> Roach testified during his first trial to circumstances that he hoped would either lead to his acquittal, or at least mitigate murder to manslaughter. In effect, he attested to his "honest belief... that his actions were necessary for his safety [whether or not] a reasonable man" would agree." State v. Faulkner, 301 Md 482, 500 (1984). Thus, Roach's theory of defense rested largely on his credibility with the jury, and trial counsel may have agreed with the trial court's rejection of the "heat of passion" theory of manslaughter as a matter of trial strategy.
>
> Upon retrial, Roach did not testify; consequently, his attorney's trial strategy did not depend on Roach's credibility in court. Thus, counsel focused on exculpatory implications of Roach's statements to the police, impeachment of the State's witnesses who were involved in the fights at the liquor store, and highlighting other deficiencies in the State's evidence.
>
> Petitioner now contends that if the jury were not persuaded that he honestly believed that Bunn remained a threat to his safety after running away, the jury might find that he was, nevertheless, caught up in the terror of the struggle, and unable to disengage rationally. Thus, given Roach's age,[3] the fight in the parking lot, the

---

[3] Roach was nineteen years old at the time of the incident. Exhibit 12, p. 5, n.3.

8

> brevity of the time between the fight and Bunn's flight, the jury might well have been persuaded that Roach acted in the "heat of passion"- if instructed to consider that defense.
>
> In the hearing on Roach's post-conviction petition, trial counsel testified that he could not recall whether he considered requesting a jury instruction on heat of passion, but did not recall a strategic decision not to pursue conflicting defenses. Therefore, this court must consider whether the evidence presented against Roach warrants a jury instruction on the "heat of passion" defense.

Exhibit 28, pp. 15-16.

To mitigate a killing from murder to manslaughter based under Maryland law the evidence must show: 1) adequate provocation; 2) killing in the heat of passion; 3) sudden heat of passion- that is, the killing must have followed provocation before there was a reasonable opportunity for the passion to cool; and 4) a causal connection between provocation, passion, and the fatal act. See Whitehead v. State, 9 Md. App. 7, 11 (1970). The post-conviction court determined that Roach's actions did not satisfy these requisites, stating:

> Petitioner contends that the evidence presented against Roach is remarkably similar to the facts adduced in Glenn v. State, 68 Md. App. 379, 407-408 (1986), cert. denied, State v. Glenn, 307 Md. 599 (1986), in which the appellate court applied the mitigating elements of the "heat of passion" defense to a charge of assault with intent to murder. In Glenn, Rizo and his friends severely beat Glenn in an unprovoked attack, after which Rizo drove away from the scene. Glenn then followed in his own car, caught up with Rizo at a stop light, pulled Rizo from his car and stabbed him. The trial judge, sitting without a jury, convicted Glenn of assault with intent to murder, although he found that Glenn "was angry about the beating he had gotten...[and acted] in hot blood." Notwithstanding the minutes that passed between the beating and the stabbing, the appellate court found that these facts "establish unequivocally a hot-blooded response to a legally adequate provocation." Glenn at 408.
>
> Here, Roach's own statement to the police showed that he, and no one else, brought a gun to the fight. Further evidence showed that the fight between the two groups of young men involved collection of a drug debt, in which Roach and his friends were the aggressors. Roach was not subjected to an unprovoked attack, as was Glenn [Glenn v. State, 68 Md. App. 379 (1986)]. Thus, he was not responding to a "legally adequate provocation" when he pursued and shot Bunn. Regardless of

9

> his youth, his hot blood, or the suddenness of his pursuit of the fleeing Bunn, Roach is not protected by "heat of passion" when he responds without legally adequate provocation. Roach was not entitled to a jury instruction on the "heat of passion" defense to mitigate his killing of Bunn.
>
> Moreover, Roach's statements to police consistently maintained that he shot Bunn to prevent Bunn from shooting him. Trial counsel appropriately pursued the only defense consistent with the evidence, and asked the jury to consider whether Roach's purported fear of Bunn were [sic] reasonable or not. To argue that Roach acted in an aggressive rage, as the heat of passion defense requires, would present an inconsistent view of Roach's conduct not generated by the evidence.

Exhibit 29, pp. 16-17.

Roach argues that the post-conviction court's decision distinguishing the facts in Glenn from those presented here constitutes an unreasonable determination of the facts in light of the evidence. A state court determination of a factual issue is presumed correct and the presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir.2003). The determination of the post-conviction court is supported by the evidence, and does not constitute and unreasonable determination of facts.[4] Roach and the victim did not know each other; the argument over the $5 debt was between Bowen and Roach. Bowen testified that he did not speak to Roach. Roach initiated the first punch and hit Bowen. Roach's three friends joined the melee. When Donald Bunn exited the car to help Bowen, Roach used his gun to hit Bunn on the head. Bunn was unarmed. The participants in the fracas dispersed. Bowen went back into the liquor store to get the security officer and Bunn ran toward the Belle Haven Apartments. When Bowen exited the liquor store, he went across the street toward the apartments

---

[4] The first trial court commented that the evidence did not generate a hot-blooded response instruction. The first trial court stated "it wasn't heat of passion. It was simply him running away and being caught up with by the decedent in a struggle over a gun which went off." Exhibit 14, p. 4.

where he found Bunn who had been shot. Exhibit 15, pp. 137, 140, 141, Exhibit 16, pp. 8, 18. After reviewing the state law and applying it to the facts, the state post-conviction court determined Roach had not satisfied the requirements for a heat of passion instruction. It is not the role of a federal habeas court to reexamine state court determinations on state law questions. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). Since the evidence presented against Roach did not warrant a jury instruction on the "heat of passion" defense, counsel cannot be ineffective for failing to request the instruction. Moreover, even if the evidence had been sufficient to support a heat of passion instruction, Roach fails to sustain his burden to show that the verdict would have been different. See Strickland, 466 U.S. at 689. The decision of the state court will therefore not be disturbed on this ground.

### b. Failure to Conduct Adequate Investigation and Call Witnesses

Roach faults trial counsel for failing to conduct investigation and call witnesses to testify to his reputation for peacefulness. Four character witnesses testified at the first trial, opining that Roach was a non-violent person.

At the post-conviction hearing, trial counsel characterized his failure to call witnesses as an "oversight." Exhibit 27, p.18. "I don't think it was either trial tactic or strategy. It would have been an oversight not to call them." Id. The post-conviction court asked trial counsel whether he was "certain the decision not to call character witnesses was not based on your view of their relative value in this case as a matter of trial strategy or tactic and that you are absolutely certain, given your years of experience, that this was really an oversight on your part?" Exhibit 27, p. 21. Trial counsel responded "one of the difficult problems is testifying about something that happened so long ago." Trial counsel testified that he was certain that he had reviewed the witness testimony from the first

11

trial. See id., pp. 9, 16, and 22. Trial counsel told the court "[t]here would not be a down side risk to calling [the character witnesses]." Id. The post-conviction court asked trial counsel to review the witness testimony and "...tell me whether you think if you had the decision to make today about whether or not to call them, you would consider them to be meritorious witnesses worth calling or whether as a matter of trial strategy you may choose not do." Id. p. 23. After a brief recess was taken to review the transcript, trial counsel testified, "... I would have to say if I didn't call these individuals, there's nothing that stands out about them. But they seem to b[e] your typical character witnesses that, given another opportunity, I would have called them for whatever worth they were." Id. pp. 23-24.

The post-conviction court rejected the ineffective assistance claim as follows:

> A defense attorney must "make reasonable investigations or ... make a reasonable decision that makes particular investigations unnecessary." Strickland, at 691. Although the failure to do so may constitute ineffective assistance, an attorney is not required to interview or meet with potential witnesses, if the attorney is familiar with the substance of that person's potential testimony. Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998).
>
> In the instant case, trial counsel reviewed the transcript of the first trial, and knew the actual testimony available from petitioner's four character witnesses. That testimony attests only to each character witnesses limited knowledge of petitioner's reputation for honesty and nonviolence, rather than affording alibi or exculpatory testimony crucial to his defense. An attorney's failure to call a witness whose testimony would tend to negate a defendant's guilt may constitute deficient performance; however, an experienced defense attorney's decision not to call character witnesses is a matter of trial strategy that a reviewing court may not second guess. [citation omitted]. Here, the State's cross-examination of Roach's character witnesses demonstrated that none of them were familiar with Roach's friends or activities around the time of the shooting. Defense counsel appropriately determined that the weaknesses inherent in the testimony of these character witnesses offset any possible benefit that derived from it.
>
> Thus, trial counsel performed effectively in determining not to call weak character witnesses, and petitioner was not prejudiced by trial counsel's strategic decision in this regard.

Exhibit 28, pp. 13-14.

The post-conviction court's determination is supported by the record. Exhibit 5, pp. 161-72, See also 28 U.S.C. 2254 (e) (1) (fact findings made by the state court are presumed correct). Counsel testified he was sure he had reviewed their testimony from the first trial. Roach's post-conviction counsel acknowledged that the witnesses "weren't, what we would say, the greatest witnesses in the world...." Exhibit 27, p. 52. It also bears noting that the first jury trial returned a verdict less favorable to Roach where the witness had testified.

Roach claims the post-conviction court improperly characterized the failure to call character witness a strategic decision. Petition, p. 13-14. Even if true, this neither demonstrates deficient performance nor resulting prejudice. Roach fails to establish that but for counsel's failure to call the character witnesses at retrial the result of the proceedings would have been different. See Strickland, 466 U.S. at 697. The state court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. There is, therefore, no cause to warrant habeas corpus relief on this ground.

### c. Failure to Move to Suppress Statements

Roach faults trial counsel for failing to move to suppress his first statement to police. Detective Miller testified that prior to receiving Miranda warnings, Roach gave an exculpatory statement which later proved false. The prosecutor did not introduce Roach's pre-Miranda statement or refer to it during closing argument.

Roach asserts that this statement detracted from his credibility before the jury. "Considering that Petitioner's defense theory was self-defense, which was based on his subsequent statements to police, his credibility was critical. For the jury to accept Petitioner's claim of self-defense, it had

13

to credit his subsequent statements to police wherein he professed his honest belief that he needed to use force to defend himself." Petition, pp. 15-16.

The post-conviction court determined that trial counsel's failure to pursue a timely motion to suppress Roach's pre-<u>Miranda</u> statement, and its waiver of an objection to that testimony, was deficient performance. The post-conviction court, however, concluded the deficient performance did not prejudice the outcome of trial. The post-conviction court ruled:

> Roach's first trial counsel moved to suppress all oral or written statements Raoch made while in police custody. After a hearing, Judge Shepard denied that motion. Roach did not contest that ruling in his appeal from that conviction; thus, that ruling remains the law of this case.
>
> In his petition for post-conviction relief, however, Roach may challenge only the alleged deficiencies of counsel during the second trial. After the Court of Appeals reversed his first conviction and remanded for new trial, Roach retained new counsel.
>
> At the post-conviction hearing, Roach's second trial counsel testified that he did not recall that Roach made his initial statement denying culpability before being given <u>Miranda</u> warnings, until Detective Miller testified to that fact. Thus, although counsel recognized that Judge Shepherd's denial of the motion to suppress remained the law of the case, he did not seek to relitigate the motion by distinguishing pre- and post- <u>Miranda</u> statements.
>
> When Detective Miller testified that Roach's initial statement denying any knowledge of the shooting preceded <u>Miranda</u> warnings, trial counsel immediately sought to repair the damage (T.117-118). The trial judge reserved ruling on the belated motion to suppress, and counsel failed to renew that motion or request a ruling. Nevertheless, neither the prosecutor nor any witness referred to the inadmissible statement at any other time during the remainder of the trial.
>
> Roach's first attorney failed to distinguish the pre-<u>Miranda</u> statement from Roach's other statements in the initial motion to suppress, and new counsel waived his objection to that statement by failing to obtain a ruling from the court. Thus, both attorneys failed to recognize the inadmissibility of his first statement or distinguish it from Roach's subsequent statements.

Exhibit 28, pp. 9-10.

* * * * * * * * * * * * * * * * * * * *

[h]owever, this court must determine whether this omission prejudiced the outcome of the trial. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (petitioner must "demonstrate actual prejudice" from counsel's failure to litigate Fourth Amendment claim). Because the inadmissible statement here is not the only inconsistent statement Roach made, or crucial evidence linking Raoch to the crime, this court may not presume prejudice from counsel's failure to secure its exclusion. Perry v. State, 357 Md. at 87. (petitioner prejudiced because counsel's deficiency permitted jury to consider inadmissible evidence linking him to co-defendant)   Rather, this court must weigh the impact of the brief reference to this pre-Miranda statement against all other evidence presented against Roach.

In the instant case, Detective Miller and Detective McCann testified to a series of oral and written statements that Roach made to either of them while in custody, and Roach's further demonstrative statements in helping officers locate the weapon used to kill Bunn. Roach cannot, and does not complain about counsel's alleged ineffectiveness in failing to exclude those other statements– each of which contradicted important elements in his preceding statements.

The inadmissible evidence must be considered in its context, as the jury considered it. After identifying Roach as the person with whom he met, Detective Miller testified:

> After that, I interviewed him again at 12:00 p.m. 1302 hours, and I advised him that he was the main suspect in the shooting of a man at Palmer Liquors, and **at first he denied even being there**, but after I spoke to him for a brief while, he admitted to being in a fight at Palmer Liquors over some money that was owed to Mr. Roach. [citation omitted].

Petitioner's counsel contends that the admission of this reference to Roach's first, false, exculpatory statement "obviously damaged his credibility in the eyes of the jury." [citation omitted]. While this may be true, this court must weight that damage against the damage to Roach's credibility inherent in his subsequent, admissible statements. Since each of Roach's admissible statements contradicted telling facts in his preceding statement, Roach impaired his own credibility with each succeeding statement. For example, in admissible statements Roach first asserted that he did not know who owned the gun, and finally that he owned the gun used to kill Bunn. Further, although Roach eventually claimed that he and Bunn struggled over the gun, he later wrote that he shot Bunn three times after Bunn fell and was trying to get up.

Roach impaired his credibility with the jury through his own admissible inconsistent statements. Although trial counsel failed to secure the

15

> exclusion of that inadmissible denial, admission of that statement did not provide a critical element of the state's case. This court finds that any additional damage from Roach's inadmissible statement denying any knowledge or involvement was negligible, at best. Moreover, this court finds only a slight possibility, rather than any substantial probability, that the brief reference to this denial affected the outcome of the trial.

Exhibit 28, pp. 12-13. [emphasis in original].

The state post-conviction court decision is well-supported in the record. In accordance with the deferential standard of review in § 2254 proceedings, the Court concludes that the state post-conviction court's decision did not involve an unreasonable application of federal law or determination of the facts in light of the evidence. Roach has not shown a reasonable probability that the outcome would have been different absent the statement. See Kimmelman, 477 U.S. at 375.

### d. Right to Present a Defense Denied by the Absence of a Jury Instruction on Heat of Passion.

Roach contends that because there was no jury instruction on heat of passion, he was denied a meaningful opportunity to present a complete defense. Roach did not raise this claim in state court on either direct appeal or post-conviction review; consequently, it is procedurally defaulted. See 28 U.S.C. § 2254(b) and (c), see Rose v. Lundy, 455 U. S. 509, 521 (1982); O'Sullivan v. Boerckel, 526 U.S. 838,(1999). As earlier noted, the evidence was deemed insufficient to support a heat of passion defense instruction when it was considered in the context of ineffective assistance.

## CONCLUSION

For reasons stated herein, the Petition IS DENIED. An Order consistent with this Memorandum Opinion follows.

July 14, 2009                                                                 /s/
                                                    ROGER W. TITUS
                                                    UNITED STATES DISTRICT JUDGE